UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

MAURICE WHETSTONE,

                Defendant,
_____/

Case No. 09-20348

HON: AVERN COHN

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

### I. Introduction

This is a criminal case. Defendant Maurice Whetstone is charged with:

(1) Possession with Intent to Distribute Heroin under 21 U.S.C. § 841(a)(1),

(2) Possession with Intent to Distribute Cocaine Base under 21 U.S.C. § 841(a)(1), and

(3) Felon in Possession of a Firearm under 18 U.S.C. § 992(g)(1).

Now before the Court is Whetstone's motion to suppress evidence obtained during the execution of two search warrants that lead to his arrest and indictment. He asserts that the warrants were obtained in violation of his Fourth Amendment rights because of a lack of probable cause. Specifically, he asserts that the information provided by a Drug Enforcement Administration (DEA) agent to a magistrate judge to obtain the warrant failed to establish a nexus between the alleged criminal activity and the locations that were searched and was also stale when the warrants were obtained.

The Court held a hearing on this motion on November 9, 2009. At the hearing, the

government was directed to provide a copy of the DEA agent's affidavit separately highlighting the information in the affidavit that supported a finding of probable cause to search each of the locations. The government complied with the Court's order and the motion is now ready for decision. For the reasons that follow, the motion will be denied.

## II. Background

On April 19, 2006, a DEA agent obtained search warrants for 5531 Cadillac Avenue, Detroit, Michigan (5531 Cadillac) and 5059 St. Clair Street, Detroit, Michigan (5059 St. Clair) based on allegations that each of the two residences contained drugs, drug paraphernalia, and drug proceeds related to Whetstone's alleged drug trafficking activities. A magistrate judge signed both search warrants on the basis of a single affidavit sworn by Special Agent Ian Ponman (Ponman) of the DEA.

### A. Information Connecting Defendant to Criminal Activity

The affidavit states:

In August, 2005 DEA agents executed a search warrant for the home of Freman Raychawn Woodward (Woodward), a suspected drug dealer. DEA agents seized several cell phones, one of which had a phone book entry for "Wet" which contained the number 313-377-5671.[1]

In September, 2005 a confidential informant (DEA-1) told Ponman that every one to two months, Whetstone purchased between 100 and 200 grams of heroin from Woodward.

In November, 2005 DEA-1 provided Ponman with Whetstone's cell phone number:

---

[1]This phone number was later identified as Whetstone's cell phone number.

313-377-5671. Ponman obtained an administrative subpoena for 313-377-5681 and found that Whetstone was the subscriber. Further DEA investigation showed that Whetstone's cell phone number was connected to more than one dozen active DEA narcotics investigations.

During a January, 2006 debriefing, DEA-1 told Ponman that Whetstone had purchased heroin from Woodward in 100-200 gram quantities since the summer of 2004. He stated that Whetstone had most recently purchased 200 grams of heroin from Woodward in early December 2005 at a price of $17,000. DEA-1 also described in detail the manner in which drug transactions between Whetstone and Woodward occurred. A second confidential informant (DEA-2), corroborated DEA-1's statements by describing in almost identical terms the manner in which Woodward's drug transactions occurred. DEA-1 told Ponman that Whetstone utilized another individual, Michael Lewis Dixon (Dixon), to distribute the heroin for him.

DEA-1 also told Ponman that Whetstone had purchased at least 100 grams of heroin from Terrence Lamar Tyler (Tyler) in September, 2005. Through another confidential informant (DEA-3), Ponman obtained corroborating statements that implicated Tyler as a member of a heroin, cocaine, and marijuana trafficking organization.

In a January 18, 2005 interview with Ponman, DEA-1 stated that Whetstone told him that, on January 14 or 15, Woodward had offered to give Whetstone heroin in exchange for one of his vehicles. DEA-1 also told Ponman that, on January 15, 2005, Whetstone had sold heroin near French Road and Gratiot in Detroit because his distributor, Dixon, was out of town.

**B. Information Connecting 5531 Cadillac to Evidence of Criminal Activity**

In September, 2005 DEA-1 told Ponman that Whetstone lived at 5531 Cadillac, Detroit, Michigan. DEA-1 also told Ponman that Whetstone kept heroin and proceeds from the sale of heroin at 5531 Cadillac.

In November, 2005 Ponman confirmed that 5531 Cadillac was Whetstone's address by matching it to the address listed in his cell phone subscriber information.

In a January, 2006 debriefing, DEA-1 told Ponman that Whetstone stored heroin and packaging materials/paraphernalia at 5531 Cadillac.

The DEA again corroborated that 5531 Cadillac was Whetstone's address by obtaining records showing that he was the electricity subscriber at that residence.

Ponman further corroborated Whetstone's association with 5531 Cadillac through surveillance conducted between December 2005 and March 2006. During four separate surveillance dates, Ponman observed 3 different cars parked at 5531 Cadillac which were registered to Whetstone. During one of the surveillance dates, Ponman also observed a car belonging to Janet Marie Howard (Howard) who was investigated by the DEA in a 1996 heroin and cocaine case.

On February 23, 2006, Ponman and an associate conducted a trash pull at 5531 Cadillac. They found marijuana cigarette stubs, mail addressed to Whetstone, a phone number belonging to an individual who was linked to other individuals in this investigation as well as two other ongoing criminal narcotics investigations, suspected drug ledgers, and suspected drug packaging materials.[2]

---

[2] The suspected drug packaging materials were state lottery receipts which were cut and folded to facilitate the packaging of heroin.

### C. Information Connecting 5059 St. Clair to Evidence of Criminal Activity

In September, 2005 DEA-1 told Ponman that Whetstone's girlfriend lived at 5059 St. Clair and that Whetstone occasionally stayed at that address. DEA-1 also told Ponman that Whetstone kept heroin and proceeds from the sale of heroin at 5059 St. Clair.

In a January, 2006 debriefing, DEA-1 told Ponman that Whetstone stored drug proceeds and documents at 5059 St. Clair.

The DEA corroborated Whetstone's association with 5059 St. Clair by obtaining records showing that his girlfriend was the electricity subscriber at that residence.

Ponman further corroborated Whetstone's association with 5059 St. Clair through surveillance conducted between December 2005 and March 2006. During six separate surveillance dates, Ponman observed two cars parked at 5059 St. Clair which were registered to Whetstone or otherwise associated with him.[3]

### D. Additional Statements in Affidavit

Ponman stated that in the past DEA-1 had provided accurate and reliable information related to numerous large-scale heroin, marijuana, and cocaine dealers in the Detroit area. He made similar statements concerning the reliability of DEA-2 and DEA-3.

Ponman also stated that, based upon his training and experience and information received from other experienced DEA agents, he knew "that it is common for drug dealers to secret illegal narcotics, narcotic proceeds, and records of drug transactions or financial transactions in secure locations within their residence(s) for ready access and to conceal them from law enforcement authorities."

---

[3]One of the cars was registered to Whetstone's brother; it was in the constructive possession of Whetstone and utilized solely by him.

### III. Analysis

### A. The Standard

The Fourth Amendment guarantees that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. In Illinois v. Gates, 462 U.S. 213, 232 (1983), the Supreme Court explained the probable cause is a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Accordingly, the Supreme Court in Gates rejected previous, more rigid tests in favor of the "totality-of-the-circumstances" test. Id. at 238. When faced with an application and affidavit for a search warrant, "the task of the issuing magistrate judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id.

When a search warrant is sought, probable cause requires "a nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting United States v. Van Shutters, 163 F.3d 331, 336-37 (6th Cir. 1998)). In other words, there must be "reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978). In addition, probable cause must exist at the moment that the warrant is issued and the evidence supporting it cannot be stale. Sgro v. United States, 287 U.S. 206, 210 (1932). There is no fixed time limit regarding the staleness of evidence and a court

must consider the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998).

Generally, a magistrate judge's determination as to probable cause is entitled to deference by the reviewing court. Id. at 238-39. The reviewing court's role is limited to deciding "whether the evidence as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause." Id.; Massachusetts v. Upton, 466 U.S. 272, 733 (1984).

### B. Arguments

### 1.

Whetstone asserts that there was not probable cause to sign the search warrants because the government failed to demonstrate a nexus between either of the locations and evidence of criminal activity. He further asserts that, even if the information in Ponman's affidavit did provide probable cause when it was gathered, it had become stale by the time the warrants were signed and was no longer sufficient to support the warrants.

Whetstone asserts that Ponman's affidavit did not establish a sufficient nexus to suggest that evidence of criminal activity would be found at either 5531 Cadillac or 5059 St. Clair. He asserts that the evidence obtained from sources other than DEA-1 merely establish that Whetstone resided at 5531 Cadillac and frequented 5059 St. Clair. The utility records, phone records, and surveillance information, standing alone do not suggest that evidence of criminal activity would be found. Further, Whetstone argues that, despite

repeated surveillance activity, the DEA did not observe anything suggesting that criminal activity was occurring at either address. While the trash pull at 5531 Cadillac suggested that evidence of drug trafficking could be present, Whetstone asserts that Ponman's affidavit did not provide sufficient detail regarding what was found.[4] The only information in the affidavit suggesting that evidence of drug trafficking would be found at the addresses were the statements of DEA-1. Whetstone asserts that this information is not reliable because the affidavit does not include any assertion that DEA-1 personally observed evidence of criminal activities at these residences and does not otherwise provide the basis for DEA-1's knowledge.

Whetstone also asserts that any information that may have supported probable cause had become stale before the warrants were signed. He notes that the last contact between DEA-1 and Ponman occurred on January 18, 2009 – three months before the warrants were sought and obtained. In addition, the last arguably relevant information – the trash pull at 5531 Cadillac – occurred approximately two months before the warrant for that address was obtained. Finally, the last investigative activity of any kind – the surveillance of 5059 St. Clair – occurred on March 22, 2006, nearly a month before the warrant for that address was sought.

Whetstone does not appear to challenge that there was probable cause to believe that he was involved in drug trafficking or distribution. He is challenging whether there was probable cause to believe that evidence of drug trafficking would be found at either of the

---

[4] Whetstone asserts that the affidavit merely contains conclusory statements regarding drug ledgers and packaging material and does not provide sufficient detail support for the conclusions expressed. He also asserts that the marijuana cigarette butts suggest personal drug use, not drug trafficking.

8

addresses. He claims that there was an insufficient nexus, at the time the warrants were signed, to suggest that evidence of criminal activity would be found at either address.

**2.**

The government asserts that the affidavit included sufficient information to establish probable cause that Whetstone was involved in drug trafficking and that evidence of this criminal activity would be found at both 5531 Cadillac and 5059 St. Clair.

The government first asserts that Ponman's affidavit provided probable cause to believe that Whetstone was involved in drug trafficking. DEA-1's statements provide the basis for this assertion. DEA-1 provided Ponman with detailed information of the dates, frequencies, and quantities of heroin allegedly purchased by Whetstone from Woodward and Terry. He also provided Ponman with details of how Whetstone packaged the heroin and sold it through his associate, Dixon. The DEA was able to corroborate DEA-1's information based on the statements made by DEA-2 and -3 regarding the activities of Whetstone's suppliers and through cell phone records that tied Whetstone's cell phone to Woodward and to several other ongoing DEA narcotics investigations. In addition, Ponman stated that all of the DEA's confidential informants had a history of providing accurate and reliable information to the DEA.

The government also asserts that there is sufficient information in the affidavit to link Whetstone to each residence. In addition to DEA-1's statements, the government identified utility bills and cell phone subscription information establishing Whetstone's residence at 5531 Cadillac and his girlfriend's residence at 5059 St. Clair. The DEA's surveillance activities also identified the presence of vehicles registered to Whetstone at each residence. Taken together, this evidence suggests that Whetstone maintained at least a

part-time residence at each location.

Finally, the government asserts that there was probable cause to believe that Whetstone would keep evidence of his drug trafficking activities at each house. DEA-1 told Ponman on two separate occasions that Whetstone kept such evidence at each residence. In addition, the government argues that, based on the experience and training of its agents, it is reasonable to believe that an individual involved in drug trafficking would keep evidence of drug trafficking at his or her residence.

Thus the government claims that there was probable cause to believe that Whetstone was involved in drug trafficking and that he resided at both 5531 Cadillac and 5059 St. Clair. Accordingly, in light of the experience of DEA agents and DEA-1's statements, it was reasonable for then to believe that Whetstone would keep evidence of his drug trafficking at these residences.

**3.**

Although the government has provided virtually no direct evidence to suggest that drugs, drug paraphernalia, drug proceeds, or any other evidence of drug distribution crimes would be found at either 5531 Cadillac or 5059 St. Clair, the affidavit did provide a sufficient basis for a finding of probable cause to search each address.

The government is correct to assert that Ponman's affidavit provided probable cause to believe that Whetstone was involved in drug trafficking and resided at both 5531 Cadillac and 5059 St. Clair. DEA-1's statements regarding Whetstone's drug trafficking activities, if taken as true, provide ample evidence to support probable cause. Ponman stated that the confidential informants implicating Whetstone in drug trafficking, including DEA-1, were accurate and reliable. In addition, the myriad connections between Whetstone's cell phone

and ongoing drug investigations corroborated DEA-1's statements. The government's surveillance of both residences, as well as the record searches of utility bills and cell phone subscriptions also established that Whetstone maintained at least a part-time residence at each address.

However, the question is whether there was probable cause to believe that evidence of Whetstone's drug trafficking would be found at the addresses which were searched. Ponman stated in his affidavit that, based on his experience and training, drug traffickers kept evidence of their criminal activity at their residences. Therefore, it would also be reasonable to assume that Whetstone would do the same. The Sixth Circuit has upheld search warrants on the ground that drug traffickers are likely to keep evidence of their criminal activity at their residence, even when there is no independent evidence suggesting that criminal contraband will be found. United States v. Newton, 389 F.3d 361, 365-66 (6th Cir. 2004), rev'd on other grounds Newton v. United States, 546 U.S. 803 (2005); United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir. 2002). Thus there was probable cause to believe that evidence of criminal activity was present at each residence based on Ponman's statement alone. The fact that DEA-1 also asserted that Whetstone kept drugs, drug paraphernalia, and drug proceeds at each residence further supports a finding of probable cause.

The information contained in the agent's affidavit was also sufficiently "fresh" to establish probable cause to conduct a search at the time it was issued. The DEA's investigation of Whetstone, as described in the affidavit, occurred sporadically over the course of several months. It involved frequent, although not daily activity directed toward Whetstone and much of the key information included in the affidavit was several months

old. Still, given the nature of the alleged crimes, this information was sufficiently fresh to support a finding of probable cause under the factors included in Spikes. First, this was an ongoing criminal enterprise, not an isolated criminal event. Spikes, 158 F.3d at 923. Whetstone allegedly purchased substantial amounts of heroin every one to two months over the eighteen months prior to Ponman's last conversation with DEA-1. Although that conversation occurred three months before the warrant was signed, there was no reason to believe that the allegedly ongoing criminal enterprise had ceased. Second, Whetstone appeared to be entrenched at both addresses. Id. Although Ponman's surveillance had ended a month before the warrant was signed and occurred over a period of only two months, the utility records gathered by the DEA showed that Whetstone has resided at 5531 Cadillac for more than ten years and that his girlfriend has resided at 5059 St. Clair for nearly three years. Since both locations were long-term residences, it was reasonable to assume that Whetstone still frequented both locations. Although the drugs, proceeds, and paraphernalia might be considered to be perishable or easily transferred, Id., the DEA believed that there was an ongoing criminal enterprise. Even if the exact drugs, proceeds, and packaging materials mentioned by DEA-1 were no longer present, it was reasonable to believe that they were replaced by other drugs, proceeds, and packaging materials through the alleged ongoing drug trafficking enterprise. Finally, the places searched were the residences of Whetstone and his girlfriend and were places where he resided on a regular basis. As a result they should be considered secure operational bases and not merely criminal forums of convenience. Id. Thus all four of the factors listed in Spikes suggest that the information included in the affidavit was of enduring quality. A gap of only a few months was not enough to make the information stale.

Thus the information provided in Ponman's affidavit contained probable cause to believe that Whetstone was engaged in drug trafficking and that he resided at 5531 Cadillac and at 5059 St. Clair. There was also a sufficient nexus to believe that evidence of Whetstone's criminal activity would be found at each location and the evidence was of an enduring quality and had not become stale.

## Conclusion

For the reasons stated above, Whetstone's motion to suppress the evidence of the search warrants executed at 5531 Cadillac and 5059 St. Clair is DENIED.

SO ORDERED

     s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: November 25, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 25, 2009, by electronic and/or ordinary mail.

     s/LaShawn R. Saulsberry
Case Manager, (313) 234-5160

13